UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OTIS ELEVATOR COMPANY, THE HARTFORD FIRE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>EQC OPERATING TRUST, CBRE INC, CLIFFORD HEARNE,<br><br>Defendants. | CASE NO. 2:20-cv-00501-RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Before the Court is the Joint Motion to Stay Litigation Pending Litigation of Underlying Action of Plaintiffs Otis Elevator Company, The Hartford Fire Insurance Company, and Defendants EQC Operating Trust f/k/a HUB Properties Trust ("EQC") and CBRE, Inc. ("CBRE"). Dkt. 43. Defendant Clifford Hearne opposes the motion. For the reasons set forth herein, the undersigned recommends that the motion to stay be granted.

BACKGROUND

A.   The Hearne Lawsuit – Case No. 2:16-cv-01010-JCC

On March 1, 2016, Defendant Clifford Hearne was riding in an elevator in the Expedia Building, when it allegedly dropped without warning. The Expedia Building is owned by EQC and the property manager is CBRE. Mr. Hearne alleges that the abrupt dropping of the elevator caused him physical injuries. On May 25, 2016, Mr. Hearne filed suit against HUB (now EQC)

REPORT AND RECOMMENDATION - 1

and CBRE, alleging premises liability for the elevator incident. EQC and CBRE removed the lawsuit to the Western District of Washington. *See Hearne v. HUB Bellevue Properties, LLC, et al.*, United States District Court for the Western District of Washington Case No. 2:16-cv-01010-JCC (the "Hearne Lawsuit").

Plaintiff Otis provides service for the elevators at the Expedia Building pursuant to a September 2014 Service Contract between CBRE and Otis. The Service Contract required Otis to maintain liability insurance covering EQC and CBRE as "additional insureds" with respect to liability arising out of Otis's work. The Service Contract also required Otis to defend and indemnify EQC and CBRE against claims and liabilities arising out of Otis's work at the Expedia Building. Pursuant to those contractual terms, EQC and CBRE tendered the Hearne Lawsuit to Otis for defense and indemnity. EQC and CBRE also tendered the Hearne Lawsuit to Otis's liability insurer, The Hartford, requesting coverage as additional insureds under the Hartford policy. The Hartford subsequently agreed to defend EQC and CBRE from the Hearne Lawsuit subject to a reservation of rights.

Trial in the Hearne Lawsuit was scheduled to commence on July 6, 2020 but due to Corona-virus restrictions, was postponed and has not been rescheduled. To date, neither liability nor damages have been adjudged in the Hearne Lawsuit.

B.   Coverage Dispute – Case No. 2:20-cv-00501-RAJ-BAT

On April 2, 2020, The Hartford and Otis filed this lawsuit against EQC and CBRE, seeking a declaration that they have no duty to defend or indemnify EQC or CBRE under the Service Contract or the Hartford policy. Dkt. No. 1. Mr. Hearne is also a named defendant, but apart from binding Mr. Hearne to the outcome of the coverage dispute, no party has brought any affirmative claims against him. *See* Complaint, Dkt. 1. Mr. Hearne brought no counterclaims

REPORT AND RECOMMENDATION - 2

against Plaintiffs or cross-claims against EQC or CBRE. (Dkt. 9) and requests that "no[] judgment be entered in this case that has any collateral estoppel, judicial estoppel, or res judicata effect on the claims made by Mr. Hearne in the underlying lawsuit." *Id*. ¶ 22.2

According to Plaintiffs, the Hartford initially agreed to defend EQC and CBRE under a full reservation of rights because, early in the litigation, there was significant uncertainty as to whether Mr. Hearne's alleged injuries arose from Otis's work. Although the parties in the Hearne Lawsuit dispute the purported lurch and/or its cause, it appears that they are all in agreement that the building's elevator was functioning properly. Thus, Otis contends it has no duty to indemnify EQC or CBRE because it has now become clear that no party in the Hearne Lawsuit contends that the building's elevators malfunctioned or that Mr. Hearne's injuries otherwise arose from Otis's work.

EQC and CBRE each filed Answers, denying many of Plaintiffs' factual assertions regarding the Hearne Lawsuit as well as their substantive claims for relief. *See* Dkt. No. 22 and Dkt. 36. After EQC raised concerns that litigating this action may potentially prejudice its defense of the Hearne Lawsuit (*see* Dkt. 22 at 14-16), Plaintiffs, EQC, and CBRE agreed to seek a stay of this litigation. Dkt. 49 at 2.

On August 23, 2020, the parties filed a Joint Status Report, but because of the pending motion to dismiss and motion to stay, no trial date or other pretrial deadlines have been set.

C.     Motions for Extension and to Strike

Mr. Hearne seeks an extension of time regarding his response to Plaintiffs' joint motion to stay, as his response was filed about five and one-half hours after the deadline. Dkt. 47.

On August 28, 2020, Plaintiffs and Defendants EQC and CBRE filed separate replies to Defendant Hearne's response. Dkt. 49 and Dkt. 50. Mr. Hearne immediately filed a surreply.

REPORT AND RECOMMENDATION - 3

1  Dkt. 51. Mr. Hearne moves to strike the reply filed by Defendants EQC and CBRE arguing that,
2  because the moving parties filed a joint motion, they should be limited to one reply; the total of
3  the two replies is 11 or 13 pages; and the second reply contains new authority and argument not
4  contained in the opening brief. Dkt. 51. Alternatively, Mr. Hearne argues that if the Court
5  considers the second reply brief, he is allowed under LR (g) to file his surreply. *Id.*, at 2-3.

6  The undersigned finds it appropriate, in making this report and recommendation, to
7  consider all filings submitted in support of and in opposition to the motion to stay. Accordingly,
8  it is recommended that Mr. Hearne's motion for extension (Dkt. 47) be **granted** and his motion
9  to strike (Dkt. 51) be **denied**.

10  DISCUSSION

11  "A district court has inherent power to control the disposition of the causes on its docket
12  in a manner which will promote economy of time and effort for itself, for counsel, and for
13  litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936); *see also*, *CMAX, Inc. v. Hall*,
14  300 F.2d 265, 268 (9th Cir. 1962). For this reason, a district court has discretion to stay
15  proceedings pending before it. See *Mediterranean Enters. v. Ssangyong Corp.*, 708 F.2d 1458,
16  1465 (9th Cir. 1983). In exercising such discretion, the court "must weigh competing interests
17  and maintain an even balance." *Landis*, 299 U.S. at 254-55. "A trial court may, with propriety,
18  find it is efficient for its own docket and the fairest course for the parties to enter a stay of an
19  action before it, pending resolution of independent proceedings which bear on the case." *Leyva v.*
20  *Certified Grocers of California, Ltd.*, 593 F. 2d 857, 863 (9th Cir. 1979).

21  In considering whether a stay is appropriate, a District Court should weigh the competing
22  interests that will be affected by the requested stay, including: (1) the possible damage which
23  may result from granting the stay; (2) the hardship or inequity which a party may suffer if the

REPORT AND RECOMMENDATION - 4

1 suit is allowed to go forward; and (3) the "orderly course of justice," measured in terms of the
2 simplifying or complicating of issues, proof, and questions of law which could be expected to
3 result from a stay. *CMAX, Inc.*, 300 F.2d at 268.

4     In considering whether a stay of this litigation is appropriate, the Court first considered
5 Washington law, which governs the insurance contract at issue. Under Washington law, where
6 there is a question about coverage, the insurer can defend under a reservation of rights. The
7 insurer then has the right to file a declaratory judgment action to determine coverage and its
8 obligation to indemnify. *Truck Ins. Exch. v. Vanport Homes, Inc*., 147 Wash.2d 751, 760, 58
9 P.3d 276 (2002). If an insurer in bad faith breaches the duty to defend, the insurer is estopped
10 from asserting the claim is outside the scope of coverage. *Kirk v. Mt. Airy Ins. Co*., 134 Wash.2d
11 558, 563, 951 P.2d 1124 (1998). However absent bad faith, the insurer in the declaratory
12 judgment action is entitled to a determination on whether there is coverage under the insurance
13 policy and if so, whether the insurer is responsible for the entire stipulated judgment amount.
14 *Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc*., 132 Wash.App. 803, 134 P.3d 240
15 (2006), *reversed on other grounds*, 161 Wash.2d 903, 169 P.3d 1 (2007). The insurer is liable
16 only for the judgment "entered provided the act creating liability is a covered event and provided
17 the amount of the judgment is within the limits of the policy." *Kirk v. Mt. Airy Ins. Co*., 134
18 Wash.2d at 561, 951 P.2d 1124.

19     While the insurer "may defend under a reservation of rights while seeking a declaratory
20 judgment that it has no duty to defend," it must avoid seeking adjudication of factual matters
21 disputed in the underlying litigation because advocating a position adverse to its insured's
22 interests would "constitute bad faith on its part." 1 ALLAN D. WINDT, INSURANCE CLAIMS
23 & DISPUTES: REPRESENTATION OF INSURANCE COMPANIES AND INSUREDS § 8:3,

REPORT AND RECOMMENDATION - 5

at 8–11 to—12 (5th ed.2007). *See also State Farm Fire & Cas. Co. v. Arbor Vineyards Homeowners Ass'n*, No. CV–10–504–HU, 2011 WL 198145, at *3 (D.Or. Jan. 18, 2011) ("[A] concurrent coverage action is barred ... [when] it would force the insured to abandon its denial of liability in the underlying lawsuit or to produce evidence tending to establish such liability.") Under these circumstances, a stay would avoid possible inconsistent factual determinations that would prejudice the insured. *Home Indem. Co. v. Stimson Lumber Co.*, 229 F.Supp.2d 1075, 1086 (D.Or.2001).

Alternatively, if "the coverage question is logically unrelated to the issues of consequence in the underlying case, the declaratory relief action may properly proceed to judgment." *Id*. (quoting *Montrose Chem. Corp. of Cal. v. Superior Court*, 6 Cal.4th 287, 301, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993) (internal quotation marks omitted).

Mr. Hearne argues that he will be prejudiced by a stay because he has been unable to return to work and his medical bills continue to accrue (damages claimed in excess of $2 million). Dkt. 45 at 4, 7. Mr. Hearne contends that "until those insurance carriers either decide to follow the law or this dispute is resolved for them, [his] substantial injury will remain uncompensated, and worse, he incurs greater injury and damage financially with each passing day." *Id.* at 8. Mr. Hearne fears that if the insurance coverage is not resolved, there will be no real effort to settle the Hearne Lawsuit.

Notwithstanding whether the parties engage in settlement discussions, at this stage of the proceedings, Mr. Hearne has not yet proven his premise liability or financial damage claims and a stay of this case will not change the status of those claims. Until Mr. Hearne prevails in his claim that EQC and/or CBRE is liable for his injuries, he will not have a judgment on which he can execute. Mr. Hearne has failed to show that he will be prejudiced by a stay. As previously

REPORT AND RECOMMENDATION - 6

noted, no party has brought any affirmative claims against him in this litigation and Mr. Hearne has brought no counterclaims or cross-claims. Additionally, a stay of this litigation will ensure, as requested by Mr. Hearne, that "no[] judgment be entered in this case that has any collateral estoppel, judicial estoppel, or res judicata effect on the claims made by [him] in the [Hearne Lawsuit]."

This coverage dispute involves the alleged obligations of The Hartford and Otis vis-à-vis the two claimed insureds/indemnitees, EQC and CBRE, based Plaintiffs' contention that the elevator incident did not arise out of Otis's work under the Service Contract. EQC alleges that, by compelling it to engage in this litigation to obtain the benefits of insurance coverage, Defendant Hartford has breached its duty of good faith and fair dealing and has jeopardized and prejudiced EQC's ability to defend itself in the Hearne Lawsuit. *See* Dkt. 22 at 15. In short, to establish their contractual right to coverage and indemnity in this case, EQC and CBRE will have to prove that whatever happened with the elevator can be traced to Otis's work on the elevator – a fact that could be used against them in the Hearne Lawsuit, in which Mr. Hearne claims that EQC and CBRE are liable for any negligence of Otis. EQC and CBRE argue that continuing with this litigation will result in a discovery process that prejudices them as Defendant Hearne will be able to discover information regarding Defendants' trial strategy and case evaluation in the Hearne Lawsuit. Because EQC and CBRE will be forced to choose between defending the Hearne Lawsuit or this litigation, they will suffer prejudice if this litigation is not stayed.

Additionally, there is no question that a stay of this litigation will benefit the Court in the management of its docket as depending upon the outcome of the Hearne Lawsuit, this contract dispute may no longer be necessary. In addition, a stay would avoid involving the Court in discovery disputes regarding the disclosure of privileged and/or prejudicial information related to

REPORT AND RECOMMENDATION - 7

the defense of EQC and CBRE in the Hearne Lawsuit.

After weighing the competing interests that will be affected by the requested stay, the undersigned recommends that the motion to stay be **GRANTED** and that this matter be stayed until further order of this Court. In addition, it is recommended that the motion for extension (Dkt. 47) be **granted** and the motion to strike (Dkt. 51) be **denied**.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **September 22, 2020**. The Clerk should note the matter for **September 24, 2020**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed five (5) pages. The failure to timely object may affect the right to appeal.

DATED this 3rd day of September, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 8